UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| SHIRLEY L. PHELPS-ROPER, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | No. 4:09-CV-1298-CDP |
| ) | |
| CITY OF MANCHESTER, MISSOURI, ) | |
| ) | |
| Defendant. ) | |

**REPLY MEMORANDUM OF DEFENDANT CITY OF MANCHESTER
IN SUPPORT OF ITS MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**

**A.      Plaintiffs Incorrectly Cite The Retired *Conley* Standard For Dismissal.**

Plaintiffs' Response to the Motion to Dismiss fails to show that the Second Amended Complaint states a claim upon which relief may be granted. At the outset, Plaintiffs anachronistically cite old cases that use the *Conley v. Gibson* "no set of facts" standard, which was "retired" by the Supreme Court over two years ago in *Bell Atlantic Corp. v. Twombly*.[1] The correct standard for a district court considering a motion to dismiss is whether a complaint alleges "enough facts to state a claim to relief that is plausible on its face."[2] Moreover, "legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action [that are] supported by mere conclusory statements" are not entitled to any assumption of truth.[3]

Unfortunately for Plaintiffs, the Second Amended Complaint is nothing more than a thin mix of legal conclusions and threadbare recitals of elements of their cause of action, and so it does not state a claim. Even if there were enough facts to conduct a plausibility analysis, Plaintiffs' claims are facially implausible. The Second Amended Petition should be dismissed.

---

[1] 550 U.S. 544 (2007)
[2] *B & B Hardware, Inc. v. Hargis Indus., Inc.*, 569 F.3d 383, 387 (8th Cir. 2009)(quoting *Twombly*, 550 U.S. at 570)
[3] *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950-51 (2009)

**B.     Plaintiffs' Conclusory Allegation Of Having Been Chilled By The Ordinance Is Unsupported By Facts And Is Implausible.**

The Response to the Motion to Dismiss is little better than the Second Amended Complaint with regard to facts. Plaintiffs argue in their Response that they have asserted enough facts to plead that they were chilled by the three versions of the ordinance that they are challenging in this action. However, all Plaintiffs have pled is that they were chilled, which is nothing but a bare conclusion. The Response indignantly claims that "Plaintiffs without a doubt knew of the ordinances." If they did not, the Response declares, how could Plaintiffs claim that they were chilled by them?[4] This rhetorical roundabout merely begs the question, because Plaintiffs' unsupported claim of having been chilled is legally meaningless, and the fact that they made the claim in a lawsuit is of no moment. Mere knowledge of the ordinance is not enough to plausibly plead a chilling effect as a result of the ordinance.

The questions relating to whether or not the Plaintiffs were chilled by the ordinance are legion. When did Plaintiffs learn of the Manchester ordinance, and from whom? What effect did the ordinance have on them in the real world, as opposed to the realm of mere possibility? Did the ordinance affect any actual plans by Plaintiffs to protest in Manchester? Plaintiffs answer none of these questions in the Second Amended Complaint or, for that matter, in their Response to the Motion to Dismiss. The failure to plead facts that provide details on any of these essential issues is fatal to Plaintiffs' claims.

In order to make a plausible argument that they were chilled, Plaintiffs have to plead facts showing some objective possibility that they would have protested in Manchester but for the three versions of the ordinance that are at issue.[5] Plaintiffs cannot do this, because there are no

---

[4] Response to Motion to Dismiss, p. 2
[5] *See Sullivan v. City of Augusta*, 511 F.3d 16, 25 (1st Cir. 2007) (holding that to challenge municipal ordinance, plaintiffs must show objectively reasonable possibility that ordinance would be applied to their own activities)

2

facts pled that they even knew where Manchester was, that they knew when the ordinance was adopted, that they had ever protested in Manchester, or that they had any plans to protest in Manchester that were affected by the adoption or amendment of the ordinance. Anyone can claim to be chilled by a municipal ordinance in some remote location, but without facts linking the plaintiff to the municipality in some fashion, the claim is nothing but empty rhetoric and does not entitle Plaintiffs to relief. Absent the pleading of actual facts showing *how* Plaintiffs were each chilled by each version of the Manchester ordinance, their claims are nothing more than speculation and should be dismissed.

Moreover, even if Plaintiffs had pled facts supporting their conclusory assertion of having been chilled by the ordinance, their claim is not plausible under the analysis prescribed in *Twombly* and *Iqbal*. The Motion to Dismiss demonstrated that Missouri has a statute that was similar in many respects to the original version of the Manchester ordinance, and showed that Plaintiffs' claim of having been chilled by the ordinance is implausible because they were unwilling to protest in Missouri while the statute remained in effect.[6]

In response, Plaintiffs invent the "extra-chilling" theory, saying that it is plausible that the risk of double punishment by both statute and ordinance would have served as an additional deterrent to Plaintiffs' exercise of their free speech rights. However, Plaintiffs could not have had an intention to protest in Manchester that would have been chilled by the ordinance because it is apparent that they were not protesting at funerals in Missouri at all before (and indeed after) the preliminary injunction was issued against the state statute. Again, the mere theoretical possibility of a protest in Manchester is not enough to state a claim, particularly where the ongoing enforcement of the state statute obviously quashed Plaintiffs' plans (if any) to protest at funerals in Missouri.

---

[6] Memorandum in Support of Motion to Dismiss, p. 6

In their Response (but not in the Second Amended Complaint), Plaintiffs make much of the date on which the preliminary injunction was issued, claiming that they could have been chilled by the Manchester ordinance after that time. The later denial of the petition for a writ of certiorari by the Supreme Court is irrelevant, Plaintiffs claim. But it is Plaintiffs who waited until *after* the Supreme Court denied the petition for cert. on June 29, 2009 to file suit against Manchester (and seven other municipalities).[7] In fact, Plaintiffs' counsel did not even raise the issue of the ordinance with the City Attorney for Manchester until July 9, 2009.[8] It is Plaintiffs who pled the particulars of the Supreme Court's action in the Second Amended Complaint— almost the only factual specificity contained in that pleading.[9] Further, Plaintiffs do not contend that they protested at any funerals in Missouri after the preliminary injunction was issued against the state statute but before the Supreme Court ruled on the state's petition for cert.

The only plausible conclusion from this set of facts is that Plaintiffs were still stymied by fear of the state statute, regardless of the existence of the preliminary injunction, until the Supreme Court denied cert. Thus, the only possible inference to be drawn from the scant allegations in the Second Amended Complaint is that Plaintiffs were chilled by the statute until June 29, 2009, and had no plans to protest in Manchester that could have been affected by any of the three versions of the ordinance.

---

[7] Under F.R.E. 201, Defendant requests that the Court take judicial notice of the following cases filed in the Eastern District of Missouri: *Phelps-Roper v. City of Maplewood*, 4:09-cv-01061-HEA, filed on July 7, 2009; *Phelps-Roper v. Village of Riverview*, 4:09-cv-01082-RWS, filed July 10, 2009; *Phelps-Roper v. City of Wentzville*, 4:09-cv-01083, filed July 10, 2009; *Phelps-Roper v. City of Ballwin*, 4:09-cv-01295-CEJ, filed August 13, 2009; *Phelps-Roper v. City of Berkeley*, 4:09-cv-01296, filed August 13, 2009; *Phelps-Roper v. City of Charlack*, 4:09-cv-01297, filed August 13, 2009; *Phelps-Roper v. City of Pevely*, 4:09-cv-01299-RWS, filed August 13, 2009.

It is appropriate for the Court to take judicial notice of related proceedings before the same Court. *Enterprise Bank v. Magna Bank of Missouri*, 894 F. Supp. 1337, 1341 (E.D. Mo. 1995). The Court can take judicial notice of related proceedings when considering Rule 12(b)(6) motions. *See Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006).

[8] Second Amended Complaint, ¶ 17
[9] *Id.*, ¶ 16

With respect to the period from June 29, 2009 to present, all Plaintiffs plead is that they "would have protested" in Manchester but for the ordinance being in effect.[10] However, Plaintiff Shirley Phelps-Roper made the exact same claim with respect to the seven other municipalities she sued in this District.[11] Her identical claim here against Manchester is obviously nothing more than conclusory boilerplate, and should not be granted the assumption of truth. It certainly defies reality to suggest that after the Supreme Court denied cert. on June 29, 2009 in the state case, Plaintiffs suddenly formed an immediate intention to protest simultaneously in eight different municipalities. Without some actual facts to lend credence to such a scenario, Plaintiffs' unadorned claim of having been deterred from protesting by the Manchester ordinance is insufficient to state a claim, especially with respect to the time after Plaintiffs objectively ceased being chilled by the state statute.

Plaintiffs have quite simply alleged <u>no</u> facts to support the contention that they were chilled by any of the three versions of the Manchester ordinance. Even if they had alleged some facts that were entitled to the assumption of truth, their actions and allegations in this case and in the seven other cases against eastern Missouri municipalities show that their claim of having been chilled specifically by the Manchester ordinance is totally implausible. By failing to present any facts to support their conclusory assertion that they were chilled by the three versions of the ordinance, Plaintiffs have failed to state a claim upon which relief may be granted as to any of their Counts. The Second Amended Complaint should be dismissed.

---

[10] *Id.*, ¶ 45
[11] The Complaints for each of the seven other cases cited in Footnote 6 are attached hereto as Exhibit 1 (in two parts) and are incorporated herein by reference. Defendant requests pursuant to F.R.E. 201 that the Court take judicial notice of the commonality of the allegations made by Shirley Phelps-Roper in the various Complaints.

C.   **Conclusory Allegations Of Constitutional Violations Do Not State A Claim, And The Response Does Not Address Or Refute This Separate Ground For Dismissal.**

The Response focuses almost entirely on the supposed sufficiency of the bare allegation that Plaintiffs were chilled, and completely ignores the other key failing of the Second Amended Complaint. The Motion to Dismiss explains how Plaintiffs asserted the exact same list of alleged constitutional infirmities for all three versions of the challenged ordinance without explaining with *any* factual detail how each version of the ordinance is content-based, vague, overbroad, not narrowly tailored to meet a compelling government interest, or fails to leave ample alternatives for Plaintiffs to speak.[12]

The Response to the Motion does not address this separate ground for dismissal, except for the strange claim that the Second Amended Complaint "details . . . the ways in which Defendant's ordinances constitute violations of the First Amendment."[13] While the Second Amended Complaint does *state* the ways in which the ordinances allegedly violate the First Amendment—and does so with a rigid uniformity in all three Counts—there is absolutely no "detail" given for these claimed violations, not even a single supporting reference to the texts of the ordinance. Plaintiffs' identical laundry lists of constitutional violations for all three versions of the ordinance are precisely the type of conclusory, elements-based pleading that was abolished by *Twombly* and *Iqbal*.

By failing to address and refute this vital argument raised in the Motion to Dismiss, Plaintiffs have essentially conceded that they have pled no facts to support their bare legal conclusions regarding the alleged constitutional violations represented by each version of the ordinance. Consequently, the Second Amended Complaint fails to state a claim and should be dismissed.

---

[12] Memorandum in Support of Motion to Dismiss, pp. 5-6
[13] Response to Motion to Dismiss, p. 5

**D.     The Court Should Find The Claims In Count I To Have Been Waived And Abandoned By Both Shirley Phelps-Roper And Megan Phelps-Roper.**

The Motion to Dismiss argued that by dropping their assault on the original version of the ordinance when they filed their First Amended Complaint, Plaintiffs waived and abandoned their claims against the original ordinance and cannot revive them. Plaintiffs seem to believe that they can abandon and waive a claim through a voluntary amendment of their Complaint, and then simply revive those abandoned claims by filing another amended Complaint. However, Plaintiffs cite no cases to support this contention.

Abandonment and waiver of a claim by omitting it from an amended complaint is an affirmative act to narrow the scope of the case. This is especially true where, as here, the Plaintiffs voluntarily amended the original Complaint after the ordinance was changed, rather than dismiss and refile the action. Having made the choice to drop their claims against the original version of the ordinance and go forward with claims against the second version of the ordinance, Plaintiffs are bound by that decision.

Plaintiffs argue that even if Shirley Phelps-Roper waived and abandoned her claims against the original version of the ordinance, Megan Phelps-Roper has not, because she was not a party until the First Amended Complaint was filed.[14] There is no basis for treating Megan Phelps-Roper any differently than Shirley Phelps-Roper on the issue of waiver and abandonment. Both are represented by the same counsel and purport to adhere to the same beliefs. Plaintiffs should not be allowed to benefit by the unexplained appearance of Megan Phelps-Roper as an additional plaintiff. The Court should dismiss Count I as to both Plaintiffs.

---

[14] Megan Phelps-Roper's appearance in this case as an additional Plaintiff is a mystery, as Defendant has searched in vain for any motion for leave to join Megan Phelps-Roper as a plaintiff under Federal Rule of Civil Procedure 20. While Shirley Phelps-Roper did ask for leave to file her First Amended Complaint, her motion made absolutely no mention of adding Megan Phelps-Roper as a party plaintiff. (See Docket #15). Megan's name simply appeared in the First Amended Complaint without any notice to Defendant or a specific request for leave to add her as a party.

**E.     Conclusion.**

In a telling moment, Plaintiffs assert, with an almost palpable sense of frustration, that the Motion to Dismiss should be denied because there is enough information in the Second Amended Complaint for Defendant to make an answer. While Plaintiffs might wish that this is the standard on a Rule 12(b)(6) motion, it is not. Under Rule 8 and *Twombly* and *Iqbal*, it is incumbent upon Plaintiffs to state sufficient facts to make out a plausible claim. They have not done so, relying instead on bare conclusions and mere statements of the elements of their cause of action. As a result, the Second Amended Complaint should be dismissed.

Respectfully submitted,

**LEWIS, RICE & FINGERSH, L.C.**


By:   /s/ Evan Z. Reid
       Neal F. Perryman, #24715
       Evan Z. Reid, #93822
       500 N. Broadway, Suite 2000
       St. Louis, Missouri 63102
       (314) 444-7600
       (314) 241-6056 Facsimile
       nperryman@lewisrice.com
       ereid@lewisrice.com

       and

       Patrick R. Gunn, #23353
       City Attorney
       City of Manchester, Missouri
       11901 Olive Blvd., 3rd Floor
       P.O. Box 419002
       St. Louis, Missouri 63141
       (314) 432-4550
       (314) 432-4489 Facsimile
       prg@gunn-gunn.com

       Attorneys for Defendant
       City of Manchester, Missouri

## **CERTIFICATE OF SERVICE**

  The undersigned hereby certifies that a copy of the foregoing was sent via this Court's electronic mail system to counsel of record, this 8th day of December, 2009.

                        /s/ Evan Z. Reid