UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| SHIRLEY L. PHELPS-ROPER, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Case No. 4:09CV1298 CDP |
| | ) | |
| CITY OF MANCHESTER, MISSOURI, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

Plaintiffs Shirley Phelps-Roper and Megan Phelps-Roper bring this action

under 42 U.S.C. § 1983 against the City of Manchester, Missouri, claiming that a

Manchester city ordinance violates their First Amendment right to free speech.

Plaintiffs are members of the Westboro Baptist Church in Topeka, Kansas, whose

teachings include the beliefs that homosexuality is a grave sin and American

society's acceptance of homosexuality prompts God's wrath.  In order to express

these beliefs, plaintiffs and other WBC members have picketed funerals for years,

including more recently the funerals of American soldiers.  In response to

plaintiffs' activities, the City of Manchester enacted a city ordinance prohibiting

pickets and protests within 300 feet of a funeral or burial service in Manchester.

After this lawsuit was filed, the City twice repealed and enacted new versions of

the ordinance, which is codified as § 210.264 of the City of Manchester Code of Ordinances.

For the reasons that follow, I conclude that the Manchester ordinance in all three versions violates plaintiffs' First Amendment right to free speech, and so I will grant judgment to plaintiffs and enjoin enforcement of the ordinance. I will also deny Manchester's motions to strike.

## Background and Uncontroverted Facts

Plaintiffs Shirley Phelps-Roper and Megan Phelps-Roper are members of the Westboro Baptist Church in Topeka, Kansas. The Church's teachings include the beliefs that homosexuality is a grave sin, American society's acceptance of homosexuality causes God's wrath, and God is killing American soldiers out of wrath for society's acceptance of homosexuality. Plaintiffs have expressed these beliefs for several years by picketing and protesting funerals, because they believe this public platform is the only place where they can express themselves in a timely manner to their intended audience – funeral attendees. Their pickets and protests are conducted on public streets and sidewalks.

In response to plaintiffs' pickets and protests, defendant City of Manchester, Missouri enacted a city ordinance on March 5, 2007 that prohibited pickets and protests within 300 feet of funerals or burial services within Manchester. Specifically, the original ordinance made it unlawful:

> for any person to engage in picketing or other protest activities within
> three hundred (300) feet in front of or about any location at which a
> funeral is held, within one (1) hour prior to the commencement of any
> funeral and until one (1) hour following the cessation of any funeral.

City of Manchester Ordinance no. 07-1746 (codified at Manchester, Mo., Code of
Ordinances § 210.264) (repealed September 21, 2009).  Plaintiffs became aware of
the ordinance soon after its enactment and chose not to picket in Manchester out
of fear of prosecution.  In particular, plaintiffs planned to picket funerals that they
mistakenly believed were being held in Manchester in January of 2009, but they
abandoned those plans because of the ordinance.

Believing that their First Amendment rights had been violated, plaintiffs
filed this lawsuit in August of 2009.  Soon afterwards, Manchester repealed the
original version of §210.264 and enacted a second version on September 21, 2009.
This version provided, in relevant part:

> no person shall picket or engage in other protest activities, nor shall
> any association or corporation cause picketing or other protest
> activities to occur, within three hundred (300) feet of any residence,
> cemetery, funeral home, church, synagogue, or other establishment
> during or within one (1) hour before or one (1) hour after the
> conducting of any actual funeral or burial service at that place.  No
> person shall picket or engage in protest activities, nor shall any
> association or corporation cause picketing, or other protest activities
> to occur, within three hundred (300) feet of any funeral procession.

Manchester Ordinance No. 09-1955 (codified at Manchester, Mo., Code of
Ordinances § 210.264) (repealed October 19, 2009).   The second version defined
"other protest activities" as "any action that is disruptive or undertaken to disrupt

- 3 -

or disturb a funeral or burial service or a funeral procession." *Id.*  Manchester then

repealed the second version and enacted a third version on October 19, 2009,

which remains in force.  The current version is identical the second version except

it omits the last sentence prohibiting picketing or protesting funeral processions.

*See* Manchester Ordinance No. 09-1957 (codified at Manchester, Mo., Code of

Ordinances § 210.264).  Plaintiffs' Second Amended Complaint challenges all

three versions of the ordinance.

   After discovery ended, the parties filed cross-motions for summary

judgment on the constitutionality of all three versions of the ordinance.  Plaintiffs

contend the ordinance in all its versions (1) is an unconstitutionally content-based

regulation of speech; (2) is an unreasonable restriction on the time, place, and

manner of speech that does not serve a legitimate government interest, is not

narrowly tailored, and does not leave open ample alternatives for communication;

and is impermissibly (3) overbroad and (4) vague.  Manchester denies each of

these claims, and also moves for summary judgment on the grounds that plaintiffs

lack standing to sue and are collaterally estopped from litigating the ordinance's

constitutionality by a Sixth Circuit decision upholding the constitutionality of a

similar Ohio statute.[1]  Manchester also argues that plaintiffs' claims against the

_____

   [1]Two District Courts within the Eighth Circuit have also recently decided similar issues.
*See Phelps-Roper v. Koster*, No. 06-4156-CV-C-FJG (W.D. Mo. Aug. 16, 2010) (granting
plaintiff Shirley Phelps-Roper summary judgment on her claims that a similar Missouri statute
prohibiting funeral protests was unconstitutional), *on remand from Phelps-Roper v.Nixon*, 545

first two versions are now moot because these versions have been repealed.

Finally, Manchester has moved to strike portions of plaintiffs' affidavits in support

of their motion for summary judgment and their reply statement of facts.

## Discussion

### I.  Motions to Strike

In its first motion to strike, Manchester moves to strike portions of

plaintiffs' affidavits, in which plaintiffs aver that they were chilled from exercising

their First Amendment rights because of Manchester's ordinance.  Manchester

claims these statements are conclusory and improper under Fed. R. Civ. P. 56(e).  I

disagree.  Rule 56(e) requires affidavits (1) to be "made on personal knowledge,"

(2) to set forth facts that would be admissible in evidence, and (3) to show that the

affiant is competent to testify on the matters stated.  Fed. R. Civ. P. 56(e); *accord*

*McSpadden v. Mullins*, 456 F.2d 428, 430 (8th Cir. 1972).  I have reviewed

plaintiffs' affidavits, and both contain sufficient factual details based on plaintiffs'

personal knowledge – including plaintiffs's decision not to picket Manchester

while picketing in other places in the Saint Louis area.

---

F.3d 685 (8th Cir. 2008); *Phelps-Roper v. Heineman*, No. 4:09CV3268 (D. Neb. June 21, 2010)
(denying plaintiff Shirley Phelps-Roper's motion for a preliminary injunction against a similar
Nebraska statute).  Although I have reviewed both of these well-reasoned opinions, I conclude
that the Manchester ordinance at issue in this case is dissimilar to the statutes in *Koster* and
*Heineman*, and so I have performed my own analysis of the Manchester ordinance.

In its second motion to strike, Manchester requests that I strike plaintiffs'
reply statement of facts, because plaintiffs have not moved for leave to file this
statement pursuant to Local Rule 7-4.01(E) of the Local Rules for the United
States District Court for the Eastern District of Missouri.  But Manchester has not
shown any prejudice resulting from plaintiffs' failure to move for leave, and
nothing in the reply statement of facts has affected my decision in this case.
Accordingly, I will deny both of Manchester's motions to strike.

## II.  Mootness

Manchester also contends that plaintiffs' claims against the first and second
versions of the ordinance are now moot, because the city has repealed those
versions.  As a general rule, cases become moot when the issues are no longer
"live," or the "parties lack a legally cognizable interest in the outcome."  *Murphy
v. Hunt*, 455 U.S. 478, 481 (1982) (internal citation and quotation marks omitted).
A case is not moot, however, if (1) the challenged action was too short in duration
to be fully litigated before its cessation; and (2) there is a reasonable expectation
that plaintiff will be subjected to the same action.  *Id.* at 483; *accord Kirkeby v.
Furness*, 92 F.3d 655, 661 (8th Cir. 1996).  Here, the first and second versions of
the Manchester ordinance were repealed after plaintiffs filed their complaint in
August of 2009: the first version was repealed on September 21, 2009, and the
second on October 19, 2009.  Additionally, there is no indication that Manchester

will refrain from re-enacting these versions at some future date.  Plaintiffs' claims against the first and second versions of the ordinance are therefore not moot.

### III.  Standing

Manchester next asserts that plaintiffs lack standing to challenge the ordinance, because they have never picketed in Manchester and cannot name a funeral they plan to picket in the future.  Plaintiffs respond that they have made a sufficient showing of their intent to picket in Manchester and Manchester's willingness to enforce the ordinance.  I agree with plaintiffs.

District courts only have jurisdiction to consider actual cases and controversies.  U.S. Const. art. III § 2; *see also Valley Forge Christian College v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 471 (1982).  Encompassed within Article III's case-or-controversy requirement is the requirement that parties have standing to sue.  *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).  In the First Amendment context, a plaintiff has standing to challenge a regulation – even if she has not been cited for violating it – if she intends to engage in speech prohibited by the regulation, "and there exists a credible threat of prosecution" if she does engage in such speech.  *Babbitt v. United Farm Workers Nat. Union*, 442 U.S. 289, 298 (1979); *accord Republican Party of Minn. v. Klobuchar*, 381 F.3d 785, 792 (8th Cir. 2004) (plaintiff has standing to bring a pre-enforcement challenge to a regulation if she is "objectively

- 7 -

reasonably chilled" from exercising her First Amendment rights because of the threat of criminal prosecution).  A plaintiff satisfies this requirement if she makes significant changes to obey the regulation, or if she risks criminal prosecution by disobeying the regulation.  *Zanders v. Swanson*, 573 F.3d 591, 594 (8th Cir. 2009); *see also Babbitt*, 442 U.S. at 302 (plaintiffs had standing when the state had "not disavowed any intention of invoking the criminal penalty provisions" against plaintiffs).  "When a statute is challenged by a party who is the target or object of the statute's prohibitions, there is ordinarily little question that the statute has caused him injury." *Saint Paul Area Chamber of Commerce v. Gaertner*, 439 F.3d 481, 485 (8th Cir. 2006) (internal citation and quotation marks omitted).

Here, plaintiffs invoke federal jurisdiction, so they bear the burden of establishing standing.  *See Lujan*, 504 U.S. at 561.  Accordingly, they must respond to Manchester's motion by setting forth "specific facts" by affidavit or other evidence showing that they have standing to sue.  *See* Fed. R. Civ. P. 56(e); *Lujan*, 504 U.S. at 561 ("In response to a summary judgment motion, . . . the plaintiff can no longer rest on . . . mere allegations, but must set forth by affidavit or other evidence specific facts, . . . which for purposes of the summary judgment motion will be taken to be true.") (internal citations and quotation marks omitted).

In response to Manchester's motion, plaintiffs have presented uncontroverted evidence that Manchester aimed § 210.264 directly at plaintiffs

and other members of the WBC to prevent them from picketing funerals in Manchester.  *See* City of Manchester, Minutes of the Regular Board of Alderman Meeting of Tuesday, September 8, 2009, § 10c ("Attorney Gunn advised that some time ago, the City adopted an Ordinance prohibiting funeral protests under certain conditions.  Since then, the persons against whom these provisions were initially drafted have filed a lawsuit in federal court . . . . ").  Additionally, plaintiffs aver in their affidavits that they regularly picket funerals along with other WBC members, and that they did not consider picketing in Manchester in the past and will not picket there in the future while the current version is in force, because of their fear of arrest.  Finally, the ordinance in all versions prohibits exactly the funeral picketing in which plaintiffs regularly engage, and Manchester has not disavowed any intent to enforce the ordinance.  Because plaintiffs have presented evidence that they are "not without some reason in fearing prosecution" if they protest or picket a funeral in Manchester, they have presented sufficient evidence of standing to survive Manchester's motion.  *See* Fed. R. Civ. P. 56(e); *Lujan*, 504 U.S. at 561; *see also Babbitt*, 442 U.S. at 302.

## IV.  Collateral Estoppel

Manchester next asserts that plaintiffs are barred from litigating the constitutionality of its ordinance by the Sixth Circuit Court of Appeal's holding in *Phelps-Roper v. Strickland*, 539 F.3d 356 (6th Cir. 2008), in which the court held

that a similar Ohio statute prohibiting funeral pickets did not violate the First

Amendment. *Id.* at 373. Shirley Phelps-Roper was the plaintiff who challenged

the Ohio statute in *Strickland*, but Megan was not a party to that litigation.

"The doctrine of collateral estoppel, or issue preclusion, provides that when

an issue of ultimate fact has been determined by a valid and final judgment, that

issue cannot again be litigated between the parties in another lawsuit." *United

States v. Brekke*, 97 F.3d 1043, 1049 (8th Cir. 1996) (citing *Ashe v. Swenson*, 397

U.S. 436, 443 (1970)). Collateral estoppel is appropriate when: (1) the issue

sought to be precluded is identical to the issue previously decided by the court; (2)

the prior action resulted in a final adjudication on the merits; (3) the party sought

to be estopped was either a party or in privity with a party to the prior action; and

(4) the party sought to be estopped was given a full and fair opportunity to be

heard on the issues in the prior action. *Canady v. Allstate Ins. Co.*, 282 F.3d 1005,

1016 (8th Cir. 2002), *overruled on other grounds by Syngenta Crop Protection

Inc. v. Henson*, 537 U.S. 28 (2002).

Here, because Manchester was not a party in *Strickland*, its attempted use of

collateral estoppel is referred to as "nonmutual" or "offensive" collateral estoppel.

*See Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 329 (1979); *Aetna Cas. & Sur.

Co. v. General Dynamics Corp.*, 968 F.2d 707, 711 (8th Cir. 1992). When a party

raises offensive collateral estoppel, a district court has broad discretion to decide

whether to allow estoppel, because issues of fairness may arise in the offensive situation that are not present when the parties are identical. *Parklane*, 439 U.S. at 330-31; *accord Aetna*, 968 F.2d at 711 (denying defendant's use of collateral estoppel even though defendant satisfied all four collateral estoppel elements, because "allowing [defendant] to assert collateral estoppel offensively would be unfair" in light of courts' inconsistent prior decisions).

Even if Manchester had satisfied all four of the elements for collateral estoppel, I conclude that it would be unfair to estop Shirley Phelps-Roper, because the Eighth Circuit Court of Appeals has expressed disagreement with the Sixth Circuit on this issue. *See Phelps-Roper v. Nixon*, 545 F.3d 685, 694 (8th Cir. 2008) (holding that a Missouri statute prohibiting funeral pickets and protests should be preliminarily enjoined, because plaintiff Shirley Phelps-Roper was likely to prevail on her claim that the statute violated the First Amendment). Finally, because Megan Phelps-Roper was not a party to the *Strickland* litigation, she is not barred by the Sixth Circuit's holding. *Cf. Taylor v. Sturgell*, 128 S. Ct. 2161, 2171-73 (rejecting further extension of the collateral estoppel doctrine to nonparties because it "runs up against the deep-rooted historic tradition that everyone should have his own day in court.") (internal citations and quotation marks omitted).

## V.  Constitutionality of § 210.264

After concluding that plaintiffs have standing and are not estopped by the

*Strickland* decision, I turn now to the heart of the matter – the constitutionality of

§ 210.264.  Plaintiffs claim in their motion for summary judgment that the

ordinance in all three versions is unconstitutional, because (1) it is not content- or

viewpoint-neutral; (2) even if it is content-neutral, it places unconstitutional time,

place, and manner restrictions on protected speech; and it is unconstitutionally (3)

vague and (4) overbroad.  Manchester denies each of these claims.  I agree with

plaintiffs that the ordinance's second and current versions are unconstitutionally

content based, and that the ordinance in all versions places unconstitutional

restrictions on the time, place, and manner of speech.

### A.  Content and Viewpoint Neutrality

Plaintiffs first claim that the ordinance violates the First Amendment

because it is not content or viewpoint neutral.  Because the ordinance prohibits

protected speech – picketing and protests – on public streets and sidewalks, the

ordinance regulates expressive conduct protected by the First Amendment.[2]  *See*

*Carey v. Brown*, 447 U.S. 455, 460 (1980); *see also Hill v. Colorado*, 530 U.S.

703, 715 (2000).  As part of its protections, the "First Amendment generally

---

[2]The First Amendment applies to the states and their municipalities through the due process clause of the Fourteenth Amendment.  *See, e.g., Board of Ed., Island Trees Union Free Sch. Dist. No. 26 v. Pico*, 457 U.S. 853, 855 n.1 (1982).

prevents government from proscribing speech, . . . because of disapproval of the ideals expressed." *R.A.V. v. City of St. Paul, Minn.*, 505 U.S. 377, 382 (1992). Accordingly, content-based regulations of speech are "presumptively invalid." *Id.* For a state or municipality to enforce a content-based regulation, it must show that its regulation is "necessary to serve a compelling state interest and that it is narrowly drawn to achieve that end." *Frisby v. Schultz*, 487 U.S. 474, 481 (1988) (internal citation and quotation marks omitted).  By contrast, states and municipalities may enforce content-neutral regulations of the time, place, and manner of expression as long as they are narrowly tailored to serve a significant government interest and leave open ample alternative channels of communication. *Id.*

 In determining whether an ordinance is unconstitutionally content based, the principal inquiry is whether the municipality has adopted a speech regulation because it disagrees with the message conveyed.  *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989); *accord Hill*, 530 U.S. at 719.  Accordingly, a government's purpose in enacting a regulation is the "controlling consideration." *Ward*, 491 U.S. at 791.  However, if the government's motivation in enacting the regulation is unrelated to the content of the regulated speech, the regulation is content neutral, "even if it has an incidental effect on some speakers or messages but not others." *Id.*  "Government regulation of expressive activity is content

neutral so long as it is *justified* without reference to the content of the regulated speech." *Id.* (internal citation and quotation marks omitted) (emphasis in original). In considering the government's purpose in enacting a regulation, however, it is well settled that the plain meaning of the regulation's text controls, and the legislature's motivation for passing a law is not relevant. *See Hill*, 530 U.S. at 724-25 (rejecting the "contention that a statute is 'view-point' based simply because its enactment was motivated by the conduct of the partisans on one side of a debate"); *Nixon*, 545 F.3d at 690-91; *cf. Frisby*, 487 U.S. at 476, 482 (summarily concluding that statute was content neutral even though it was enacted in response to abortion protesters' expressive activities).

In their briefs, plaintiffs claim that the ordinance is content based because it targets only pickets and protests directed at funerals. Plaintiffs refer to the portion of the ordinance that prohibits persons from engaging in picketing or other protest activities within three hundred (300) feet of any location at which a funeral is held. In its second and current versions, the ordinance defines "other protest activities" as "any action that is disruptive or undertaken to disrupt or disturb a funeral or burial service at that place." *See* Manchester, Mo., Code of Ordinances § 210.264. Because the ordinance prohibits protests and pickets within 300 feet of funerals, plaintiffs contend the ordinance unconstitutionally prohibits only protests or pickets directed at funerals, while allowing other forms of protest or picketing.

- 14 -

Second, plaintiffs assert the ordinance is content based because Manchester enacted it in response to plaintiffs' pickets of funerals.

Plaintiffs' second assertion is easily refuted.  Although plaintiffs have presented uncontroverted evidence that the legislature's motivation in enacting the ordinance was to prevent plaintiffs from protesting funerals in Manchester, both the Supreme Court and the Eighth Circuit have rejected this argument as a basis for concluding that a regulation is content based.  *See Hill*, 530 U.S. at 724-25; *Nixon*, 545 F.3d at 690-91.  Instead, so long as a regulation is neutral on its face, the legislature's motivation is not relevant.  *See Nixon*, 545 F.3d at 690-91.  It is this issue – whether the Manchester ordinance is neutral on its face – that is more difficult to answer, however.  As plaintiffs point out, the second and current versions of the ordinance define "other protest activities" as "any action that is disruptive or undertaken to disrupt a funeral or burial service or a funeral procession."  With this definition, the ordinance on its face prohibits protest activities that are undertaken to disrupt a funeral – but not other protest activities within 300 feet of a funeral.

The Supreme Court has previously analyzed similar regulations.  For example, in *Hill*, the Court considered the content neutrality of a Colorado statute that made it unlawful for any person within 100 feet of a health care facility to knowingly approach within eight feet of another person for the purpose of (1)

passing out handbills or leaflets; (2) displaying signs; or (3) engaging in oral protest, education, or counseling. 530 U.S. at 707. Abortion protesters challenged the statute as unconstitutionally content based, but the Court determined it was content neutral because (1) it regulated the place where speech can occur, not the content of speech; (2) it applied equally to all demonstrators, no matter the content of their speech; and (3) the legislature's motivation for enacting the statute – protecting patient privacy – was unrelated to the content of the demonstrator's speech. *Id.* at 719-20. Additionally, the Court concluded that the statute was content neutral even though it prohibited persons from approaching others for the purpose of engaging in oral protest, education, or counseling with that person. *Id.* at 720-23. Rejecting the demonstrators' argument that this element made the statute a content-based regulation because it applied only to some oral communications, the Court noted that the fact that the content of an oral communication may need to be examined to determine whether a regulation applies to it does not alone render the regulation content based. *Id.* at 720. Instead, a regulation is only "constitutionally repugnant" if it prohibits "discussion of particular topics, while others [are] allowed." *Id.* at 722-23.

In contrast, the Court in *Carey v. Brown* held that a Illinois statute was content based when it barred picketing of residences in general, but exempted peaceful picketing of places of employment involved in labor disputes. 447 U.S.

455.  Because the statute on its face gave preferential treatment to the expression of some subjects – labor disputes – while prohibiting discussion on all other subjects, it was content based, and Illinois was required to show that the statute was finely tailored to serve substantial state interests.  *See id.* at 461-62; *see also R.A.V.*, 505 U.S. at 391 (city ordinance facially content based when it prohibited only certain fighting words, because even though fighting words are entitled to limited constitutional protection, the First Amendment does not allow municipalities to prohibit speech about disfavored topics only).

Applying the Court's content-neutrality jurisprudence to the Manchester ordinance, I conclude that the second and current versions are not content neutral. It is true that, like the *Hill* statute, the ordinance in all versions regulates the place of speech – protests and pickets within 300 feet of a funeral.  Thus, the first version, which only contains this place-of-speech restriction, is content neutral. *See* Manchester Ordinance No. 07-1746.  But the second and current versions go further than the first to prohibit speech "that is disruptive or undertaken to disrupt or disturb a funeral or burial service."  *See* Manchester, Mo., Code of Ordinances § 210.264.  On the one hand, this definition might alleviate problems with the ordinance being narrowly tailored, as discussed *infra*.  But by so defining protest activities, the second and current versions prohibit only protests that are undertaken to disturb a funeral, such as plaintiffs' protests, but not protests that are

not intended to disturb funerals, such as an abortion protest within 300 feet of a funeral that is loud enough to disturb a funeral but is not undertaken with that goal in mind.[3]  Because the second and current versions prohibit disfavored topics of speech only – those intended to disrupt a funeral – these two versions are more like the content-based regulations in *Carey* and *R.A.V.* than the content-neutral statute in *Hill*.  As I discuss below, however, even if I were to conclude that the ordinance in all versions is content neutral, I could not conclude that the ordinance is narrowly tailored to serve a significant government interest.

## B.  Time, Place, and Manner Restrictions

Plaintiffs next claim that, even if the ordinance is content neutral, it fails to serve a significant government interest, is not narrowly tailored, and does not leave them with open and ample alternative channels of communication.  The Supreme Court explained in *Ward* that a municipality like Manchester may impose content-neutral "restrictions on the time, place or manner of protected speech, provided the restrictions . . . are narrowly tailored to serve a significant governmental interest, and . . . leave open ample alternative channels for communication."  491 U.S. at 791 (internal citations and quotation marks omitted).

---

[3]Another example that demonstrates the difference between the first version and the second two:  the second and current versions would not prohibit the "counter-protesters" who often appear at funerals to oppose the protests of WBC members, while the first version would prohibit both WBC protests and any counter-protesters.  So under the second and current versions, the counter-protesters' message supporting the families at the funerals is allowed, but WBC members' message is not allowed.

I agree with plaintiffs that all three versions of the ordinance fail these
requirements, even if they are content neutral.

### 1.  The ordinance does not serve a significant government interest.

In its briefs, Manchester asserts that it has a significant government interest
in protecting unwilling funeral attendees from unwanted communication, because
these attendees are held captive and are emotionally vulnerable.  Citing *National
Archives & Records Admin. v. Favish*, 541 U.S. 157 (2004), Manchester also
claims that funeral attendees have a recognizable privacy interest in controlling the
disposition of their loved one's body.  Plaintiffs respond that neither the Supreme
Court nor the Eighth Circuit has recognized any of these interests as significant.

Plaintiffs are correct that neither the Supreme Court nor the Eighth Circuit
has recognized the government's significant interest in protecting funeral
attendees from unwanted communication.  The Supreme Court has recognized that
government has a significant interest in protecting unwilling listeners in their
homes from unwanted speech.  *Frisby*, 487 U.S. at 484.  But the *Frisby* Court also
noted the "unique nature of the home, the last citadel of the tired, the weary, and
the sick," concluding that, although "in many locations," individuals are expected
"to avoid speech that they do not want to hear," the "home is different" and there
"simply is no right to force speech into the home of an unwilling listener."  *Id.* at
484-85 (internal citations and quotation marks omitted); *but see Hill*, 530 U.S. at

718 (recognizing that Colorado has a legitimate interest in protecting unwilling citizen's right to be left alone while entering and exiting a medical facility) & *Ward*, 491 U.S. at 796 (recognizing New York City's substantial interest in protecting citizens from unwelcome speech in Central Park).

In *Olmer v. City of Lincoln*, the Eighth Circuit refused to recognize a municipality's significant interest in protecting unwilling listeners in a church from abortion protesters' unwanted speech.  192 F.3d 1176, 1181-82 (8th Cir. 1999).  Rejecting the municipality's argument that "churches are indistinguishable from private residences," the Eighth Circuit cited *Frisby* for the proposition that the home is unique and concluded that "[a]llowing other locations, even churches, to claim the same level of constitutionally protected privacy would, we think, permit government to prohibit too much speech and other communication."  *Id.* at 1182 (citing *Frisby*, 487 U.S. at 484); *see also Nixon*, 545 F.3d at 692 (citing *Olmer* for the proposition that plaintiff Shirley Phelps-Roper was likely to succeed on her claim that Missouri's anti-funeral picketing statute served no significant government interest); *but see Strickland*, 539 F.3d at 366 (Sixth Circuit holding that Ohio has an important interest in protecting funeral attendees from unwanted communication).

Although I sympathize with funeral attendees who, while grieving their lost loved ones, are unwillingly confronted by plaintiffs' pickets and protests, I cannot

- 20 -

hold that Manchester has a significant interest in protecting funeral attendees from

unwanted communication.  To begin with, I am bound by Supreme Court

precedent, as well as the Eighth Circuit's interpretation of that precedent, *see*

*Hood v. United States*, 342 F.3d 861, 864 (8th Cir. 2003), and the Eighth Circuit

has unequivocally refused to recognize the government's significant interest in

protecting unwilling listeners outside the residential context.  *Olmer*, 192 F.3d at

1181-82.  Moreover, I conclude that what the Supreme Court recognized years ago

in *Frisby* about the unique nature of one's home remains true today.  Certainly

there are similarities between attending a funeral and retiring to one's home;

funeral attendees, like persons in their homes, are held captive for the duration of

the funeral.  And no one can doubt a funeral attendee's emotional vulnerability.

But the home remains the last citadel of the weary and weak – the intransitive, last

resort to which a person retires at the end of her day – while attending a funeral

remains a voluntary activity.  Although Manchester might have some interest in

protecting funeral attendees, plaintiffs' right to free speech is "protected by the

express words of the Constitution," and I must apply the Eighth Circuit's directive

to draw the line between free speech and other interests "in such a way as to give

the maximum possible protection to free speech."  *See Olmer*, 192 F.3d at 1182.

I must also reject Manchester's asserted interest in protecting family

members' rights to control their loved one's body and death images, because

- 21 -

neither the Supreme Court nor the Eighth Circuit has recognized that interest as significant enough to outweigh a person's First Amendment rights. *Cf. Reno v. American Civil Liberties Union*, 521 U.S. 844, 875 (1997) ("It is true that we have repeatedly recognized the governmental interest in protecting children from harmful materials . . . But that does not justify an unnecessarily broad suppression of speech addressed to adults.") (internal citation omitted).  Because Manchester's ordinance does not serve any significant interest, I conclude that it violates plaintiffs' First Amendment rights.

### 2.  The ordinance is not narrowly tailored.

Even if Manchester's ordinance served a significant interest, however, I agree with plaintiffs that it is not narrowly tailored.  For a time, place, and manner regulation to be narrowly tailored, it "need not be the least restrictive or least intrusive" means, but it must not prohibit "substantially more speech than is necessary" to serve the government's interest. *Ward*, 491 U.S. at 798-99.  "So long as the means chosen are not substantially broader than necessary to achieve the government's interest, however, the regulation will not be invalid simply because a court concludes that the government's interest could be adequately served by some less-speech-restrictive alternative." *Id.* at 800.

The first version of the ordinance prohibited "picketing or other protest activities within three (300) feet in front of or about any location at which a

- 22 -

funeral is held, within one (1) hour prior to the commencement of any funeral and until (1) hour following the cessation of any funeral."  Manchester Ordinance No. 07-1747.  By prohibiting all pickets and protests within 300 feet of a funeral regardless of the picket's subject matter, this first version avoids being unconstitutionally content based.  But it is also this complete ban on pickets and protests within a 300-foot radius of any funeral that prevents the first version from being narrowly tailored.  If, as Manchester asserts, it has an interest in protecting funeral attendees from unwanted communication, this first version sweeps substantially more broadly than necessary to serve that interest.  Instead of prohibiting protests directed at unwilling listeners, for instance, the first version prohibits all pickets and protests within 300 feet of a funeral whether the protests disturbs a funeral or not.  Thus, it creates a total ban on public speech within a 300-feet radius of a funeral and prohibits "substantially more speech" than necessary to serve the goal of protecting unwilling funeral attendees.  *See Ward*, 491 U.S. at 799-800.  I conclude, therefore, that the first version is not narrowly tailored.

The second version of the ordinance, in force from September 21, 2009 until October 19, 2009, provided, in relevant part,

> no person shall picket or engage in other protest activities, nor shall any association or corporation cause picketing or other protest activities to occur, within three hundred (300) feet of any residence, cemetery, funeral home, church, synagogue, or other establishment

during or within one (1) hour before or one (1) hour after the
conducting of any actual funeral or burial service at that place.  No
person shall picket or engage in other protest activities, nor shall any
association or corporation cause picketing, or other protest activities
to occur, within three hundred (300) feet of any funeral procession.

Manchester Ordinance No. 09-1955.  The second version defines "other protest

activities" as "any action that is disruptive or undertaken to disrupt or disturb a

funeral or burial service or a funeral procession."  *Id.*  The current version is

identical to the second version, except that it omits the prohibitions related to

pickets at a funeral procession.  Manchester, Mo., Code of Ordinances § 210.264.

I will first consider whether second version's prohibition on picketing within 300

feet of a moving funeral procession is narrowly tailored, and then I will consider

whether the remaining portions of the second version and the current version are

narrowly tailored.

As plaintiffs point out, moving, or "floating," buffer zones such as the one

in the second version have been struck down by courts for prohibiting more

speech than necessary to serve government interests.  *See, e.g., Schenck v. Pro-

Choice Network of W. N.Y.*, 519 U.S. 357, 376-79 (1997) (striking down an

injunction's fifteen-foot floating buffer zone prohibiting anti-abortion protesters

from approaching persons entering and exiting medical clinic, because buffer zone

effectively banned protesters from going anywhere near medical clinic, and

purpose of injunction was not to ban all speech around medical clinic).  But I

conclude that the second version's floating buffer zone is unconstitutional for the simple reason that it serves no government purpose.  Manchester asserts that it has a significant government interest in protecting funeral attendees from unwanted communication, because they are held "captive" by the funeral and cannot look away from plaintiffs' protests.  But persons in a funeral procession are not held captive like those attending a funeral in a fixed location.  Unlike a funeral attendee, a person traveling with a funeral procession is able to simply look away as she passes the protest to avoid unwanted communication.  *See Cohen v. California*, 403 U.S. 15, 21 (1971) (because individuals walking through public spaces may "effectively avoid further bombardment of their sensibilities simply by averting their eyes," state had no interest in banning plaintiff from wearing clothing with vulgar messages).  Even if Manchester's interest in protecting captive funeral attendees were significant enough to outweigh plaintiffs' First Amendment rights, the second version's floating buffer zone does not serve that purpose.

Next, plaintiffs claim the second and current versions are unconstitutional, because even if they are construed to prohibit only protests and pickets directed at disturbing funerals within 300 feet of a funeral, that 300-foot ban is too large to be narrowly tailored under Supreme Court and Eighth Circuit jurisprudence.  I agree. To begin with, construing the ordinance to prohibit only protests directed at

disturbing funerals, as Manchester suggests, creates problems with the ordinance's content neutrality, as discussed above.  *See Carey*, 447 U.S. at 461-62.  Aside from the issue of content neutrality, however, I conclude that the size of the second and third versions' buffer zones – 300 feet around any place at which a funeral is being held – is simply too large to be narrowly tailored.  Both the Supreme Court and the Eighth Circuit have rejected similarly sized buffer zones as restricting too much speech.  *See Madsen v. Women's Health Ctr.*, 512 U.S. 753, 775 (1994) (rejecting a 300-foot buffer zone against picketing around residences as being too broad a ban on picketing); *Kirkeby*, 92 F.3d at 660 (concluding that, even if ordinance were content neutral, it would not be narrowly tailored because its 200-foot buffer zone around residences was "too large," and noting that any buffer zone larger than a three-house zone "would be unconstitutional.").  Like the buffer zones in *Madsen* and *Hill*, the 300-foot buffer zone in this case places too great a restriction on public speech to be narrowly tailored.[4]

## VI. Relief

Plaintiffs request (1) declaratory judgment that all three versions of the ordinance are unconstitutional, (2) nominal damages arising from each of their three counts against the three versions of the ordinance, and (3) a permanent

---

[4]Because I agree with plaintiffs on their first two claims, I need not decide whether the ordinance is overbroad or vague.

injunction enjoining enforcement of § 210.264 as enacted on October 19, 2009.  I determine that this relief is appropriate, and I will therefore declare that the March 5, 2007; September 21, 2009; and October 19, 2009 versions of § 210.264 are unconstitutional under the Free Speech Clause of the First and Fourteenth Amendments of the United States Constitution.  I will also award plaintiffs nominal damages of one dollar ($1) on each count of their complaint, and I will permanently enjoin defendant from enforcing § 210.264 as enacted on October 19, 2009.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiffs' second motion for summary judgment [#28] is granted.

**IT IS FURTHER ORDERED** that defendant's motion for summary judgment [#41] is denied.

**IT IS FURTHER ORDERED** that defendant's motions to strike [## 48, 51] are denied.

A separate Judgment will be entered this same day in accordance with this Memorandum and Opinion.

CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 8th day of September, 2010.